1
2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

3    IFS NORTH AMERICA, INC.,                    )
                                                 )
4                        Plaintiff,              )
                                                 )    No. 24 CV 749
5              -vs-                              )
                                                 )    Chicago, Illinois
6    EMCOR FACILITIES SERVICES, INC.,            )    July 11, 2024
                                                 )    2:30 o'clock p.m.
7                        Defendant.              )

8
                    TRANSCRIPT OF PROCEEDINGS - Motion
9          BEFORE MAGISTRATE JUDGE JEFFREY T. GILBERT

10   APPEARANCES:
     For the Plaintiff:          SWANSON MARTIN & BELL LLP
11                               BY:  MR. WILLIAM D. PATTERSON
                                 330 North Wabash Avenue
12                               Suite 3300
                                 Chicago, Illinois  60611
13
     For the Plaintiff:          GIBSON DUNN & CRUTCHER LLP
14   (*via Webex*)               BY:  MS. JOHANNA E. SMITH
                                 811 Main Street
15                               Suite 3000
                                 Houston, Texas  77002
16
     For the Defendant:          PILLSBURY WINTHROP SHAW
17                                 PITTMAN LLP
     (*via Webex*)               BY:  MR. ALEKZANDIR J. MORTON
18                               Four Embarcadero Center
                                 22nd Floor
19                               San Francisco, California  94111

20
     Also Present:  Julia Raczek, summer associate
21

22                   Laura LaCien, CSR, RMR, F/CRR
                        Official Court Reporter
23                     219 South Dearborn Street
                            Suite 1728
24                    Chicago, Illinois  60604
                           312.408.5032
25

1   APPEARANCES:   (Cont'd)

2   For the Defendant:        MILLER CANFIELD PADDOCK &
                                STONE PLC
3                             BY:  MR. BARRY P. KALTENBACH
                              227 West Monroe Street
4                             Suite 3600
                              Chicago, Illinois  60606
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      (Proceedings heard in open court:)

2           COURTROOM DEPUTY:  Calling 24 Civil 749, IFS North

3  America, Incorporated, versus Emcor Facilities Services,

4  Incorporated.

5           THE COURT:  Okay.  Let's get appearances of record.

6  First for IFS.  It's their first appearance here, so.

7           MR. PATTERSON:  Your Honor, my name is Bill

8  Patterson.  I'm here for IFS.  And with me today is Julia

9  Raczek.  She's a summer associate at my law firm.

10          THE COURT:  Oh, great.  Nice to meet you.  What's

11 your last name?

12          MS. RACZEK:  Raczek, R-a-c-z-e-k.

13          THE COURT:  Just like it -- spelled just like it

14 sounds.  Where do you go to law school?

15          MS. RACZEK:  Indiana University.

16          THE COURT:  Ah, in Bloomington.

17          MS. RACZEK:  Yes.

18          THE COURT:  And what year are you?

19          MS. RACZEK:  I'm going to be a 3L.

20          THE COURT:  Oh, good.  Okay.  So you know what

21 you're doing.

22          MR. KALTENBACH:  Good afternoon, Judge.  Barry

23 Kaltenbach for Emcor Facilities Services.

24          THE COURT:  Okay.  And who do we have on the video

25 here?  And do you have a screen that they could see?  Well,

1    you put it over there, right, so --

2            MR. KALTENBACH:  I can see on the screen.

3            THE COURT:  You got it over there?

4            MR. KALTENBACH:  Yes.

5            THE COURT:  Okay.  Who do we have there?  Anybody

6    want to state their appearances because we have -- for the

7    record, we do have a court reporter here.

8            MS. SMITH:  Good afternoon, Judge.  This is Johanna

9    Smith from Gibson Dunn for plaintiff IFS.

10           THE COURT:  Okay.  And?

11           MR. MORTON:  Good afternoon.  This is Alekzandir

12   Morton for Emcor Facilities Services.

13           THE COURT:  Okay.  Ms. Smith, do you have another

14   case in front of me or am I imagining that?  You don't?

15           MS. SMITH:  I hope you're imagining that, your

16   Honor, because not -- because not that I know of.

17           THE COURT:  Okay.  I got -- I thought it was a

18   Gibson Dunn case.  Okay.

19           Okay.  So the folks on the phone, if you're going

20   to speak, could you state your name again before you speak so

21   the court reporter knows who is speaking because she does not

22   have a screen in front of her in the well of the courtroom

23   here but she will know the people in the courtroom who are

24   speaking.

25           Okay.  Thank you for coming in and let me tell you

1   where I am on the motion for protective order and the motions

2   to quash; okay.

3                 MR. KALTENBACH:  Very well.

4                 THE COURT:  And if you don't want to stand, you

5   could sit too.

6                 MR. KALTENBACH:  Oh.

7                 THE COURT:  You're good standing?

8                 MR. KALTENBACH:  I'm good.

9                 MR. PATTERSON:  I sit all day, your Honor.

10                THE COURT:  Okay.

11                MR. PATTERSON:  This is a nice break.

12                THE COURT:  All right.  Let me deal with the motion

13  for protective order first.  I'm not going to enter your

14  proposed motion for protective order.

15                MR. KALTENBACH:  Understood.

16                THE COURT:  Okay.  I understand that you're all

17  good lawyers and you do this in other cases.  The Seventh

18  Circuit is a little bit particular about what is and is not

19  confidential information and -- I'm just looking at where

20  people are.  Yeah, Mr. Patterson is at Swanson, Martin &

21  Bell.  Okay.

22                I mean, we have a model confidentiality order in

23  this district; and I'm speaking to the out-of-town lawyers on

24  this as well.  That's normally what we use and we modify that

25  order as needed; okay.  Your proposed order's definition of

1    confidential information in my view -- and my view reading

2    the Seventh Circuit case law -- is way too broad; end of

3    discussion.

4                    If you look at cases like *Federal Trade Commission*

5    *versus OSF Healthcare*, which is reported at 2012 Westlaw

6    1144620, decided in 2012.  If you look at *Baxter*

7    *International, Incorporated, versus Abbott*, which is a

8    long-standing case here, which is 297 F.3d 544 decided in

9    2002 by the Seventh Circuit, it's a Judge Easterbrook

10   opinion.  And Judge Easterbrook and Judge Posner, who now is

11   not on the court, were rabid on this.  Another Judge

12   Easterbrook opinion *Union Oil of California versus Leavell*,

13   L-e-a-v-e-l-l, 220 F.3d 562, decided back in 2000.  And, you

14   know, these cases talk about what kind of information you

15   can -- and what they're -- what they're focusing on mostly, I

16   understand, is what kind of information could be filed under

17   seal and not publicly viewed in litigation.  They have a

18   very -- they had a narrower view of what that information

19   could be than other courts have had.  But a confidentiality

20   order is the first step in that process; right.  I mean, if I

21   am going to sign a confidentiality order that says that, you

22   know, anything is confidential if it fits within the full

23   ambit of Rule 26(c), then the next step is now we want to

24   file this as confidential with our briefs and other things

25   and it just runs afoul of what the Seventh Circuit has said

1    we can do here.

2           Now that's not the end of the story for you.

3    Parties can agree what they want to agree; right.  You can

4    have a confidentiality agreement among yourselves and it

5    could say we agree that this information can be designated,

6    you know, for -- for our purposes confidential.  It doesn't

7    get released outside the litigation, et cetera.  What you

8    can't agree is that we're going to file that, you know, that

9    the court is going to allow you to file that stuff as

10   confidential but you could file motion practice on that when

11   you file briefs.  Do you really want to do that?

12          I mean, every time you file a summary judgment

13   motion or a motion to compel and you're attaching a document,

14   do you want to have a knock-down drag-out fight as to whether

15   the court is going to allow you to file something as

16   confidential?  I will tell you I don't want you to have that

17   fight, okay, because I don't want to referee that fight.

18          So the easiest thing to do here -- and I guess the

19   reason I wanted you to come in is I don't understand why you

20   can't do it is to use the language in our model

21   confidentiality order.  Go ahead.

22          MR. KALTENBACH:  Your Honor, we were speaking out

23   in the hallway, which is a nice advantage of coming into

24   court.  I think that's what we've agreed.  We can just adopt

25   the definition of confidentiality from the Northern

1    District's model rule and we just can use that.

2              THE COURT:  Okay.  So that's -- so number one,

3    good.  Okay.  And if you want to modify that at all

4    consistent with the parameters of that order, you know, it

5    says employee information and you want to say something,

6    that's fine, but it's got to be restricted, limited, not as

7    broad as this is.  And, you know, Mr. Kaltenbach --

8              Right?

9              MR. KALTENBACH:  Yes, sir.

10             THE COURT:  -- you hit the nail on the head.  It

11   used to be you could talk outside a courtroom and reach all

12   sorts of agreements.  Now people don't do things in person.

13   You have guys are on the phone.  You're alone in whatever

14   four-walled cubical you have someplace whether it's at home

15   or work and, you know -- I mean, I had these guys come in in

16   the case in front of you.  The fact that they were here, we

17   were able to go into chambers and talk with the judge a

18   little bit about that.  It moves cases forward rather than

19   sending emails and everything, so bless you.  Not legally

20   but, you know, thank you for talking.  And if you send

21   me -- if you submit a confidentiality order that is narrower,

22   I will -- I will enter it.

23             You know, I looked at the whole blunderbuss

24   protective order that you had.  I mean, there's some stuff

25   that I think "really" but I wasn't balking at all of that

1    stuff.  You know, it was really the definition of the

2    confidentiality.  I mean, I know this came out of somebody's

3    office, whether it was Gibson Dunn or Pillsbury or -- you

4    know, I doubt it was Swanson, Martin & Bell because they

5    practice here all the time.  I don't know whether it was

6    Miller Canfield or not but --

7            MR. KALTENBACH:  I think it may have come out of

8    the Northern District of California actually, your Honor.  I

9    think they do it a little differently.

10            THE COURT:  Well, California is a country to -- of

11    its own.  I know that from litigating there.  So if it came

12    out of the Northern District of California -- all I will just

13    say is that it's a country of its own and not go any farther

14    because we are on the record.

15            MR. KALTENBACH:  So should we revise it to include

16    the definition of confidentiality used here, your Honor, and

17    then we can --

18            THE COURT:  Submit it to my proposed order --

19            MR. KALTENBACH:  -- submit it to the proposed order

20    inbox.  Great.  Thank you.

21            THE COURT:  -- and I'll sign it.  And I'll sign it.

22    Okay.

23            MR. KALTENBACH:  Okay.

24            THE COURT:  Okay.  Thank you.

25            MR. PATTERSON:  Thank you.

1          THE COURT:  And thanks for working that out.  Next
2     is a little bit more complicated issue of the motions to
3     quash.
4          And can you guys on the phone hear it okay -- or on
5     the web?  Just give me a thumbs up.
6          MR. MORTON:  Yes, your Honor.
7          THE COURT:  Okay.
8          MS. SMITH:  Yes.  Yes, your Honor.
9          THE COURT:  Okay.  How to do this.
10     (Brief pause.)
11          THE COURT:  Okay.  Let me ask a question on the
12     deposition subpoena and Ms. Smith, I guess, was the one who
13     was doing the declarations on this.  As I understand your
14     declarations, you got notice on March 5th of the document
15     subpoena but the subpoena actually is also dated March 5th so
16     I'm assuming from defense side it went out that day too,
17     right?
18          MR. KALTENBACH:  Your Honor, on that, I -- I think
19     it went out quickly.  The timeline on that I would defer to
20     my colleague, Mr. Morton.
21          THE COURT:  Mr. Morton, did it go out on March 5th
22     too?
23          MR. MORTON:  Your Honor, I believe it went out on
24     or around that date.
25          THE COURT:  Okay.

1      MR. MORTON:  I don't have the exact date that it

2   was served in front of me.

3      THE COURT:  Okay.  And then Ms. Smith's declaration

4   said she didn't -- although the deposition subpoena, I think,

5   is dated on March 15th ten days later, she didn't learn about

6   it until you were putting together the status report or

7   something like that, right, Ms. Smith?

8      MS. SMITH:  We learned about it later, your Honor.

9   We were noticed the one subpoena but we didn't receive prior

10  notice about the other.  And that's the two motions to quash,

11  your Honor.

12     THE COURT:  Yeah.  When you say -- but you

13  didn't -- you didn't get notice of the deposition subpoena

14  before March 15th when it was dated and went out, right?  You

15  got it substantially after that fact, right?

16     MS. SMITH:  That's right.

17     THE COURT:  After that date, yeah.

18     MS. SMITH:  Yes.

19     THE COURT:  So the first point is, this is the way

20  I read Rule 45:  I think it requires reasonable notice to the

21  other side if you're sending a subpoena out to a third party;

22  right.  And I don't consider notice on the same day or the

23  day before that it's going out really to be reasonable

24  notice; okay.

25          I think what the rule contemplates is giving the

1    other side notice and I don't know what "reasonable" is but I
2    don't think a day or two is reasonable -- or giving notice
3    the same day that it goes out in the mail, I don't think
4    that's reasonable because what's the purpose of the rule?
5    The purpose of the rule is to give the other side a chance to
6    say we object to this before you start serving all this
7    particularly on a third party with whom we have -- you know,
8    in this case it's a broken business relationship but, you
9    know, sometimes it's with somebody that is more sensitive and
10   it's hard to unring that bell particularly if the party is
11   going to move to quash it and the Court can then weigh in on
12   that issue before you serve it on somebody.
13              So, you know, I -- I -- for the -- for the -- but I
14   know in practice, a lot of lawyers do this, right, they send
15   notice to the other side the same time they're serving the
16   subpoena on the third party.  I -- I don't see a lot of law
17   on that.  I think I've written a little bit on this but I
18   can't swear to it.  I know I've done it on the record but I
19   don't -- I don't think that's good practice, okay, and then
20   it will have a consequence here.  The --
21              (Brief pause.)
22              THE COURT:  Well, I'll just tell you what the end
23   result is and then I'll tell you how I got there, okay, so
24   you don't have to be in suspense.
25              I'm going to deny the motion to quash the document

1   subpoena but I'm going to stay the enforcement of the

2   subpoena until Emcor puts together a clear list of what it's

3   really asking for because the subpoena as served was very

4   broad and Emcor's briefs in front of me here say we've scaled

5   that back quite a bit but I can't tell from your description,

6   as I will describe in my ruling here, what exactly you're

7   taking out and what you're leaving in.

8           So I'm going to stay execution of that document

9   subpoena until I have a better idea -- until further court

10  order, until I have a better idea of what documents Emcor is

11  looking for, okay, because the reason I'm denying that is

12  that I don't buy the arguments that IFS is making to quash

13  that subpoena on confidentiality and relevance; and I'll

14  explain why that is.

15          On the deposition subpoena, I am going to quash it

16  because I don't think notice was reasonable; okay.  I don't

17  think it matters much; right.  You may at some point be able

18  to take that deposition but I don't think it's good practice

19  to not tell them at all about the subpoena.  You know, at

20  least a document subpoena, they know at or about the time it

21  went out.  The dep subpoena, I don't know why that wasn't

22  served at or about the time you sent it to the Texas company

23  AmeriTex.  So, you know, is that -- is that disabling to take

24  a deposition of those people?  No.  You just have to serve

25  another subpoena but I think there should be some consequence

1    for not -- and I'm quashing it for failure to comply with

2    Rule 45's reasonable notice requirement.  So I'm going to

3    deny the motion to quash the document subpoena.  I'm going to

4    grant the motion with respect to the -- which I think is a

5    separate motion, right, IFS?

6                 MR. PATTERSON:  It was, yes.

7                 THE COURT:  Yeah.  Because the notice was not

8    timely and IFS heard about it only by happenstance later when

9    you were talking about some other things.  Is it disabling,

10   no, but I don't think you should be able to serve a subpoena

11   in that way.

12                Okay.  What's the rationale for my ruling?  I mean,

13   as a -- as an aside, I'm not even sure this is the right

14   forum for this motion; right.  I mean, the subpoena is to a

15   Texas company.  And if you look at Rule 45, it talks about

16   where you should be filing that motion.  There's at least an

17   argument that it should be filed in Texas, okay, and then if

18   the Texas court wants to send it up here, the Texas court can

19   do that.  The wrinkle here is it's really not AmeriTex that

20   is moving to quash it, at least at this point.  It's IFS.

21   IFS is here and the interest that IFS is trying to protect

22   are here so maybe you could say, well, it should be filed

23   here and it's okay to file it here.

24                I'm going to say it doesn't matter right now to my

25   ruling because either way if it was filed in Texas, it would

1  make its way back here potentially and there's an argument

2  that it was properly filed here because IFS's interests are

3  here so it's not going to prevent me from moving forward.

4          Standing of IFS, it's a close question, I think,

5  but -- and why is it a close question?  IFS says the right

6  words.  It says I'm trying to protect my privacy interests,

7  my confidential information, it's burdensome to me because

8  they're asking for completely irrelevant information.  So

9  those are the right words to -- I think that can get a party

10  standing.  I don't agree to the extent that Emcor says

11  the -- a party like IFS could never have standing and I don't

12  think that's really your position.  Your position is that it

13  should be limited to certain issues that don't exist here but

14  I think they -- they at least get their foot in the door with

15  the right words.  On the merits, I agree with Emcor.  Those

16  reasons don't pan out and I'll move to that now.  Okay.  So I

17  think they have standing to file the motion to quash.

18          There's two substantive arguments, right, the

19  confidentiality -- the subpoena seeks confidential

20  information, IFS's confidential information, and the

21  information being sought even as narrowed is not relevant;

22  okay.  I don't think either of those stand up under scrutiny.

23  Mr. -- Ms. Smith and --

24          MR. PATTERSON:  Mr. Patterson.

25          THE COURT:  -- Mr. Patterson.  Sorry.  I'll learn

1   your names as we go on.

2          On the confidential information, I don't think IFS

3   can meet its burden there to show the information being

4   sought is confidential at least the way it's argued in the

5   briefs because this is information that IFS gave to a third

6   party; okay.  It's not -- there's nothing that says it's

7   protected by a confidentiality agreement.  I mean, when you

8   characterize the kind of information we're talking about, it

9   says that on Page 7 of the motion, IFS -- the subpoena

10  likewise improperly seeks IFS's confidential general business

11  information.  That's an oxymoron.  If it's confidential, it's

12  confidential.  If it's general business information, it's

13  general business information.  Normally general business

14  information is not confidential, hence what we talked about

15  with a protective order; right.

16         So -- and then you go on to say that you're looking

17  for -- it covers Topics 5 and 7.  It covers IFS's

18  representations during the vendor selection process; okay.

19  That's statements made to a third party to enter into a

20  business relationship with them.  There's no rule that I

21  think that's confidential, all right, and IFS hasn't

22  convinced me that that's confidential.

23         It says -- Topics 8, 11, and 12 cover

24  communications relating to IFS's design and implementation of

25  the project described in AmeriTex pleadings.  Okay, but

1    that's a business transaction.  That's an arm's length
2    business transaction.  I don't see how that qualifies as
3    confidential information; and in your two briefs, you haven't
4    convinced me that it does.  You say the right words but
5    it -- it doesn't translate into saying that this information
6    is confidential.  There was a third -- an arm's length
7    transaction that IFS was entering into with AmeriTex and
8    Emcor now wants some information from AmeriTex about
9    communications between the parties about that and agreements
10   and other things.  I don't think there's any world that that
11   constitutes confidential information.

12           If I'm missing something, Mr. Patterson or
13   Ms. Smith, you could tell me, but I'm reading your briefs and
14   that's what it says in the briefs.  I mean, you know, I don't
15   see something that says this was signed, sealed, and it was
16   also -- you know, it was -- you know, this fits under some
17   type of confidential -- and even if there was a
18   confidentiality agreement, the second part of this is, as
19   Emcor said, this could be covered with a confidentiality
20   order here.  You're going to get a confidentiality order here
21   and, you know, that's how this typically gets resolved.

22           So, I mean, that's where I am on confidentiality.
23   Mr. Patterson, you --

24           MR. PATTERSON:  Yeah, I would just simply jump in
25   and maybe this is a more appropriate discussion at the end.

1   But obviously as you see in the process of writing the

2   briefs, Emcor modifies their position on the breadth and I

3   think that kind of undercuts some of our arguments about some

4   of that material.  For example, they agreed halfway through

5   the briefing process that they weren't going to seek the

6   settlement agreement anymore.  Well, that had been

7   confidential and no longer is.  And again, perhaps we come to

8   this at the end but I think I will -- one, we will obviously

9   take this transcript back and make sure that we understand

10  it.  But kind of point two is once they do modify the

11  subpoena, and kind of the question to you is, you know,

12  are -- is this dismissed without prejudice and we might have

13  to come back -- again, consistent with your order today --

14  just sort of process --

15              THE COURT:  Yeah.

16              MR. PATTERSON:  -- questions for how you want to

17  handle that.

18              THE COURT:  Well, let's deal with it at the end

19  because I completely agree with you.  And yes, they have to

20  come back.  Okay?

21              MR. PATTERSON:  Great.

22              THE COURT:  And that should satisfy me after

23  they've -- hopefully they satisfy you first, but if they

24  can't, then you can bring this issue to me because it is true

25  that the target has moved and Emcor, probably for good reason

1    but certainly in a pretty smart way, I think, said we're

2    going to narrow this.  My problem is I don't know how it's

3    been narrowed from what Emcor says in its briefs.  I have the

4    RFP topics here attached to the subpoena and I've read them

5    and I agree they're very broad but I don't -- but when Emcor

6    says we're only going to be looking for "internal AmeriTex

7    documents and communications related to agreements between

8    AmeriTex and IFS not involving settlement, IFS's alleged

9    misrepresentations to AmeriTex made during the course of the

10   parties' relationship, issues that arose during the

11   implementation of the contracted-for software, and AmeriTex

12   damages," those are much more limited, I think, than what's

13   in the broad RFPs.

14          My problem is I don't know what that means.  I

15   don't know how that translates into individual RFPs or parts

16   of RFPs.  And before I'm going to allow a subpoena to go out

17   and have somebody, a third party respond to it, I need to

18   understand better what you're looking for; okay.

19          So in answer to Mr. Patterson's question, you need

20   to meet and confer and get a much more -- much clearer list

21   that says this is what is covered -- what the subpoena covers

22   and IFS may not agree with it; but if it fits within the

23   parameters that I think is seeking relevant information, then

24   I'm going to allow that to go on.  But right now, I'm staying

25   execution of that until that step two process happens; okay.

1   And, let me tell you why that is.

2           On the relevance issue, I don't buy the argument

3   that the information is not relevant at least for 404(b)

4   purposes, Federal Rule of Evidence 404(b) purposes.  I think

5   it can be.  And I think Emcor has convinced me in its brief

6   that it is seeking information that could be 404(b)

7   information and that's a legitimate avenue of discovery.  I

8   would say even if the allegedly fraudulent conduct involved

9   one transaction, it can still be relevant -- 404(b) does not

10  require there to be a pattern or practice.

11          Now I recognize that Emcor says in its brief the

12  evidence will show a pattern or practice, okay, but they

13  don't have to show a pattern or practice to be able to

14  introduce 404 -- evidence for -- under Federal Rule of

15  Evidence 404(b) that shows, for example, you know, intent,

16  plan, the other things that -- I thought I wrote that down

17  here.

18          (Brief pause.)

19          THE COURT:  Yeah, absence of mistake, intent, lack

20  of accident, knowledge.  They could point to a past

21  transaction that is similar to this transaction or at least

22  they could try to, okay, for discovery purposes.  Let me --

23  let me rephrase what I'm saying.

24          I'm not ruling on the admissibility of this

25  evidence at all.  I'm ruling on whether it is within Rule 26

1    for relevance and proportionality purposes and I think it is.

2    Whether it comes in or not, that's a different argument.  But

3    they've convinced me that at least another transaction that

4    was similar to this one or similar to allegations of

5    fraudulent -- allegedly fraudulent conduct are being made

6    could potentially be relevant for 404(b) purposes and

7    proportional to the needs the case.  That's all they have

8    to do under Rule 26(b)(1) in order for it to be discoverable.

9    Admissibility under 404(b) is another issue and I'm not

10   touching that.

11           But I don't -- my point is I think it's potentially

12   404(b) evidence.  I don't think that it has to be pattern or

13   practice -- even though that's what Emcor argued, I get

14   that -- but, you know, this is not a Monell case where you're

15   out there trying to, you know, show a pattern or practice of,

16   you know, municipal misconduct or something like that.  It's

17   a corporate transaction and you can introduce or attempt to

18   introduce at least 404(b) evidence about other conduct and

19   this fits, I think, within the general parameters of that

20   sufficiently to be discoverable.

21           But as I said, it's not clear to me at the end of

22   the day what Emcor is asking for here now because -- excuse

23   me -- because it says it is narrowing it substantially, it

24   seems to me, and I don't -- I would need to know how

25   that -- what it is within the request for production you're

1   asking for or whether it's a new request for production that

2   would have to be amended on the deposition note -- on the

3   document subpoena before I'm content to say that it actually

4   is -- what they're actually seeking is relevant and

5   proportional under Rule 404(b).  I think it's potentially

6   there based on the arguments that are being made but I can't

7   tell really what you're looking for.

8            In particular, to use one example, I don't see how

9   AmeriTex's damages arising from IFS's conduct is relevant for

10  404(b) purposes or for anything.  I think the rationale that

11  Emcor is stating, at least as I understand it, is this was a

12  similar transaction in which similar representations were

13  made that Emcor says that are, quote/unquote, fraudulent and

14  we want to look at that.  How IFS was -- how IFS's damages

15  can be relevant or proportional to the needs of this case

16  with different damages, I don't know; right.  So it might be

17  curious, you might want to know, but I don't know how you're

18  entitled to that information under Rule 26(b)(1).

19           And similarly, you know, I don't know internal

20  AmeriTex documents and communications about what; okay.  I

21  know some of the RFPs focus on certain communications but

22  like RFP 4 says, quote, all documents and communications

23  referencing, evidencing, or relating to any

24  misrepresentations IFS made to you during the course of your

25  relationship with IFS.  I think that's pretty broad; okay.

1   And, you know, documents or communications relating to a

2   representation about X, Y, Z, A, B, I mean, that's more

3   particularized; right.  I mean, this -- this, you know -- and

4   I think you're better off doing something like that.  I don't

5   know if you've talked to AmeriTex or not.

6          Do you know that, Mr. Kaltenbach.

7          MR. KALTENBACH:  I don't know if it was about the

8   subpoena.  I think they're -- to some level, there was a

9   discussion of, hey, we're issuing a subpoena or going to

10  issue a subpoena.

11         THE COURT:  Yeah.

12         MR. KALTENBACH:  I don't -- I don't know that there

13  was a -- I don't think it got -- and I'm not a hundred

14  percent sure.  I don't think there was a meet and confer, so

15  to speak, on that.  I could be wrong.

16         THE COURT:  If you hit a third party in Texas with

17  something like that and they hire counsel or they have a

18  general counsel, then general counsel can say what the heck

19  is this, I'm not going to do that, you got to narrow it so,

20  you know, you might as well narrow it at the front.  And

21  there should -- and there are -- and if the transactions are

22  similar, then you might be able to specify -- you know,

23  Mr. Morton, if you're the draftsperson here -- what actually

24  you're looking for, about what, within what time frame.  I

25  mean, you know -- so, you know, I have the option of quashing

1    it -- quashing it for those reasons that it's just

2    gobbledegook at this point but I think all that would mean is

3    that you would go back to the drawing board and come up with

4    a narrower subpoena so why not work to, you know, get an

5    amended subpoena here but -- and stay execution of it,

6    enforcement of it.

7            You know, maybe with my thoughts here, both parties

8    can come to some agreement as to what actually would be

9    relevant here since -- if the confidentiality is out the

10   window and it doesn't have to be a pattern or practice.  I

11   don't know if you can.  If not, I'll decide.  I mean, that's

12   why, you know, I -- I get to wear this black robe but -- so

13   I'm going to deny the motion to quash but I'm not allowing

14   you to go forward until you get a -- there's a much better

15   sense of what you're looking for; okay.

16           I also don't know how important this is in the

17   grand scheme of this particular case.  I mean, you know,

18   somebody at Emcor or one of their lawyers may have said, ah,

19   this happened over there, let's hit those guys with a

20   subpoena.  Well, you know, they moved to quash and now we're

21   stymied.  How important is this now or later?  You know, I

22   know there's a merits motion pending too so, you know, I

23   leave that to you.

24           I'm going to -- I'm going to rule on the motion so

25   it's not going to be an open motion on the docket but you're

1    not going to be able to go forward with it until you do some

2    more things and that's what I wanted to do is set a date for

3    you to give me a status report on what you've talked about

4    and where you're heading with this and what you're thinking

5    you might want to do or you want to tee up to me.

6          So that's, I think, my ruling.  I want to know if

7    you have any questions.

8               MR. PATTERSON:  No, your Honor.

9               MR. KALTENBACH:  Not -- not here your Honor, no.

10              THE COURT:  Mr. Patterson?

11              MR. PATTERSON:  No, I do not.

12              THE COURT:  Okay.  Anybody on the phone?  I mean,

13   on the fancy screen?

14              MS. SMITH:  Your Honor, Johanna Smith with Gibson

15   Dunn for IFS.

16              Did you say you were setting a date for the status

17   report?  Will that just be in your written order?

18              THE COURT:  No.  We're going to talk about that

19   right now.  I just wanted to see -- I mean, you're going to

20   tell me when is a good date for you to do that.  I just want

21   to see if anybody had any questions on the ruling first.

22              Mr. Morton?

23              MR. MORTON:  One comment, your Honor.  This is

24   Alekzandir Morton for Emcor.

25              I understand your Honor's ruling granting the

1    motion to quash as to the deposition subpoena.  I just wanted

2    to note for the record and for clarification, in Emcor's

3    opposition we actually agreed to withdraw without prejudice

4    the deposition subpoena.  I wanted to point that out in case

5    that changes the ruling to one as being moot --

6            THE COURT:  Yeah.

7            MR. MORTON:  -- as opposed to withdrawn.  There

8    is -- it's the same but I wanted to raise that.

9            THE COURT:  You know what, I saw that and I

10   forgot -- I forgot that; yeah.  No; I'll change my ruling to

11   say the motion to quash, that one is denied as moot as Emcor

12   has withdrawn that subpoena, okay, so I don't have to rule on

13   it but that will be the ruling.  Thank you for pointing that

14   out.

15           MR. MORTON:  Thank you, your Honor.

16           THE COURT:  And my -- Brenda, for purposes of the

17   order, I would say I'm denying the motion to quash but the

18   Court is staying enforcement or execution of that subpoena

19   pending Emcor further specifying what documents are covered

20   by its subpoena and a meet and confer by the parties toward

21   that end.

22           Okay.  And so then I'd like a status report after

23   you've done that.  So when do you think is a reasonable time

24   to do that?

25           MR. PATTERSON:  I'll defer to Emcor.  It's their --

1    it's their subpoena.

2              THE COURT:  Well, how long is there -- I mean, are

3    you guys out of town?  Two weeks, three weeks, more than

4    that?  It's the summer.

5              MR. KALTENBACH:  Alekzandir, do you think in two or

6    three weeks?

7              MR. MORTON:  I think a status report could be

8    within two weeks.  We can prepare our revised subpoena

9    shortly and then it would be a matter of scheduling a meet

10   and confer.

11             MR. PATTERSON:  Your Honor, could we have three

12   weeks for the status report just to make sure we get that

13   conference first?  I've --

14             THE COURT:  Yeah.

15             MR. PATTERSON:  My schedule is a bit hectic the

16   next few weeks.

17             THE COURT:  Yeah.  Three weeks from today is

18   August 1.  I'm flexible.  I just want a date.

19             MR. PATTERSON:  August 1st works for us.

20             MR. KALTENBACH:  I'm sure that's fine, Judge.

21             THE COURT:  Okay.  Okay.  Joint status report on

22   August 1.

23        (Brief pause.)

24             THE COURT:  So we don't lose track of what's going

25   on here, let's set another status hearing.  How about August

1  7 at 1:30 p.m.?

2         MR. KALTENBACH:  I'm sure that will be fine, Judge.

3         MR. PATTERSON:  Your Honor, I'm actually on

4  vacation.  Do you think we could do the next week?

5         THE COURT:  I'm on vacation that week.

6         MR. PATTERSON:  Oh, I'm sorry.

7         THE COURT:  That's fine.  That's fine.  You know

8  what, then just do your status report -- well, you're on

9  vacation.  I don't want to lose track of you but then I --

10        MR. PATTERSON:  We can do August 7th.  I'm sure I

11 can get coverage.  We have a whole firm of people.

12        THE COURT:  Okay.

13        MR. KALTENBACH:  A summer associate can cover.

14        THE COURT:  Yeah.  You got one, two, three --

15        MR. PATTERSON:  We got two firms of people, in

16 fact.

17        MR. KALTENBACH:  Four firms.

18        THE COURT:  Four -- well, yeah.  I don't want to

19 force -- Ms. Smith doesn't have to come in from Houston for

20 this.  So if that doesn't -- let's say August 7th.  If that

21 doesn't work, let me know.  I think 1:30 p.m. and --

22        MR. KALTENBACH:  Your Honor, will that be local in

23 person and then by Webex again for out of town?

24        THE COURT:  Yeah, same thing.

25        MR. KALTENBACH:  Thank you.

```
 1              THE COURT:  Is that okay?  Works?

 2              MR. KALTENBACH:  Yeah.

 3              THE COURT:  I think it worked fine for you guys on

 4      the screen, right?

 5              MR. MORTON:  Yes, your Honor.

 6              MS. SMITH:  Yes, your Honor.

 7              THE COURT:  Okay.  What do you think about that

 8      date, Brenda?  Would you prefer August 6th?  I'm going to be

 9      down here anyway then.

10              COURTROOM DEPUTY:  Yeah.

11          (Brief pause.)

12              THE COURT:  Okay.  Yeah, final answer.

13              Okay.  Let's go off the record.

14          (Discussion off the record.)

15              THE COURT:  Let's back on quickly and just say

16      adjourned.  The hearing is adjourned.

17          (Proceedings concluded at 3:36 p.m.)

18

19                    C E R T I F I C A T E

20          I hereby certify that the foregoing is a complete, true,

21      and accurate transcript of the proceedings had in the

22      above-entitled matter before Magistrate Judge Jeffrey T.

23      Gilbert at Chicago, Illinois, on July 11, 2024.

24

25      /s/Laura LaCien                    July 15, 2024
        Official Court Reporter                DATE
```