**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IFS NORTH AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-CV-00749 (lead case) |
| v. | ) | |
| | ) | |
| EMCOR FACILITIES SERVICES, INC., | ) | |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| EMCOR FACILITIES SERVICES, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-CV-00770 |
| v. | ) | |
| | ) | |
| IFS NORTH AMERICA, INC., | ) | |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM ORDER**

Currently before the Court is Plaintiff/Counter-Defendant IFS North America, Inc. ("IFS") Motion to Quash Third-Party Subpoenas [ECF No. 81] issued by Defendant/Counter-Plaintiff EMCOR Facilities Services, Inc. ("EMCOR"), filed in April 2025. The Motion seeks to quash third-party subpoenas issued by EMCOR to five of IFS's customers seeking information related to the customers' software implementation agreements with IFS and disputes related to those contracts. Memorandum of Law in Support of IFS North America, Inc.'s Motion to Quash Third-

1

Party Subpoenas [ECF No. 82] at 2 ("Motion"). In July 2025, the parties filed a Joint Status Report [ECF No. 110] seeking a discovery stay to permit them to engage in informal alternative dispute resolution. That stay has now expired and EMCOR says it still needs the discovery sought in these third-party subpoenas. *See* Joint Status Report [ECF No. 131] at 2.

Federal Rule of Civil Procedure 26(b)(1) states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Rule 45 governs the use of subpoenas, although "[t]he scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Andersen v. City of Chicago*, 2019 WL 423144, at *2 (N.D. Ill. Feb. 4, 2019) (citing *Williams v. Blagojevich*, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) and Advisory Committee Notes regarding 1991 Amendments to Rule 45(a)(2)).

Federal Rule of Civil Procedure 45(d)(3) governs motions to quash or modify a third-party subpoena. Upon a timely motion, Rule 45(d) mandates that the court quash or modify a subpoena if the subpoena "subjects a person to undue burden" or "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii-iv). Rule 45(d) likewise permits "a person

2

subject to or affected by a subpoena" to file a motion to quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information[.]" Fed. R. Civ. P. 45(d)(3)(B).

The Court first address the issue of IFS's standing to challenge the subpoenas. IFS argues it has standing because the subpoenas call for disclosure of IFS's confidential commercial information and IFS is therefore affected by the subpoena. Motion [ECF No. 82] at 4. EMCOR does not dispute IFS's standing to challenge the subpoenas. While ordinarily a party does not have a standing to seek to quash a subpoena issued to a non-party, "a party has standing to move to quash a non-party subpoena if it 'infringes upon the movant's legitimate interests'" which include "interference with business relationships, or production of private information about the party that may be in the possession of a third party." *Architectural Iron Workers' Loc. No. 63 Welfare Fund v. Legna Installers Inc.*, 2023 WL 2974083, at *1–2 (N.D. Ill. Apr. 17, 2023) (quoting *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) and *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 187 (N.D. Ill. 2013)) (defendants asserted legitimate interest in documents sought by subpoenas to defendant's clients and business partners including "correspondence between Defendants' personnel and their private clients, contract terms, and prices"; collecting cases). Without opposition from EMCOR challenging IFS's position that the subpoenas seek sensitive business information about its relationships with customers, the Court finds IFS has standing to contest the subpoenas.

3

The subpoenas seek two main categories of discovery: (1) documents related to alleged misrepresentations made by IFS to other customers including complaints regarding IFS software or claims that IFS breached its software implementation contracts (RFP Nos. 1-5, and 11) ("Misrepresentation Requests")[1] and (2) documents related to the customer costs or payments associated with IFS's software (RFP Nos. 6-9) ("Costs Requests")[2]. *See* Attachment A to Motion [ECF No. 82-1]. In addition, RFP No. 13 seeks documents related to any agreements (other than settlement agreements) between the customers and IFS. Motion [ECF No. 82] at 1 n.1

The Court previously denied IFS's motion to quash another subpoena that EMCOR issued to AmeriTex Pipe & Products, LLC ("AmeriTex"), also an IFS customer which had alleged fraud against IFS. Transcript of Proceedings [ECF No. 53]. The Court found discovery about "another transaction that was similar to this one or similar to allegations of . . . allegedly fraudulent conduct" in this case could potentially be relevant to EMCOR's fraudulent inducement claim and affirmative

---

[1] These requests seek documents and communications relating to (RFP No. 1) the customer's "decision to enter into a software implementation agreement with IFS, including the specific requirements [the customer was] expecting IFS to meet"; (RFP No. 2) "any misrepresentations IFS made to [the customer] . . . which induced [the customer] to enter into a software implementation agreement"; (RFP No. 3) "any misrepresentation IFS made" to the customer during the relationship; (RFP No. 4) "issues that arose during IFS's design and implementation" of the software for the customer; (RFP No. 5) "complaints [the customer] raised during IFS's design and implementation of IFS SOFTWARE"; (RFP No. 6) "the total design and implementation cost of the IFS SOFTWARE that IFS quoted to [the customer] before [the customer]" entered into the software implementation agreement"; and (RFP No. 11) "IFS's breach of the software implementation agreement" with the customer.

[2] These requests seek documents and communications relating to (RFP No. 7) "any payments made by [the customer] to IFS"; (RFP No. 8) "any invoices issued by IFS to [the customer]; (RFP No. 9) "any refunds, credits, returns, monies, or compensation IFS provided to [the customer]. During the parties' negotiations, EMCOR agreed to withdraw RFP Nos. 10 and 12, which requested information about customer damages. *See* Motion [ ECF No. 82] at 1 n.1.

defenses including as Rule 404(b) evidence. [ECF No. 53] at 21("[EMCOR] convinced me that at least another transaction that was similar to this one or similar to allegations of . . . allegedly fraudulent conduct . . . could potentially be relevant for 404(b) purposes and proportional to the needs of the case. That's all they have to do under Rule 26…."). Although the Court denied IFS's motion to quash, the Court also said it would not allow subpoenas to go forward unless the scope of certain requests were narrowed. [ECF No. 53] at 24. The parties subsequently agreed on the scope of a revised subpoena. [ECF No. 54].

Although IFS acknowledges the Court previously found certain discovery related to alleged misrepresentations made by IFS to a customer to be relevant as "potentially probative Rule 404(b) evidence," IFS argues the Misrepresentation Requests in the subpoenas at issue here should be stricken because those requests seek documents related to alleged breaches of contract by IFS rather than allegations of fraud, as was the case with the prior customer's subpoena. Motion [ECF No. 82] at 8. In support, IFS cites an attorney declaration referring to IFS's discovery response identifying these customers as having made "customer contract termination requests" and further stating the customers did not assert fraud claims. *Id.* at 8.

The issue is whether evidence of IFS's alleged misrepresentations to other customers is relevant to EMCOR's fraudulent inducement claim in this case. IFS does not cite any authority strictly limiting the relevance of discovery about misrepresentations allegedly made to other customers to only circumstances where those customers expressly claimed fraud. While IFS cites cases holding that Rule

5

404(b) evidence is not relevant to intent in a breach of contract case, those cases are not on point because they do not address the relevance of such discovery to a fraudulent inducement claim.[3]

As the Court previously found, discovery about IFS's similar transactions with other customers could potentially be relevant under Rule 404(b) to IFS's claims and EMCOR's defenses in this case. Transcript [ECF No. 53] at 21. Other courts have similarly allowed discovery from other customers under this rationale. *See Channelmark Corp. v. Destination Prods. Int'l, Inc.*, 2000 WL 968818, at *2–4 (N.D. Ill. July 7, 2000) (where plaintiff alleged fraudulent inducement, discovery about "defendant's business dealings with a corporation that is not a party to the underlying case may be used to show intent in a fraud case" under Rule 404(b)) (citing *Jannotta v. Subway Sandwich Shops, Inc.,* 125 F.3d 503, 517 (7th Cir.1997)). As the court explained in *Channelmark Corp.*:

> If defendants fraudulently induced AKD [the non-party customer] in a manner similar to the fraudulent inducement that Channelmark alleges, then the evidence is probative of whether the defendants intended to fraudulently induce Channelmark in the underlying case. Channelmark believes that in 1996, [defendant] made substantial

---

[3] *See Battle Born Munitions Inc. v. Dick's Sporting Goods, Inc.*, 2021 WL 3810177, at *4 (W.D. Pa. Aug. 26, 2021) (granting motion in limine to exclude evidence of defendant's conduct with respect to other vendors as irrelevant to plaintiff's breach of contract claim; "to the extent that Plaintiff intends to use Defendant's conduct with respect to other vendors as evidence of Defendant's alleged misconduct with respect to Plaintiff, that is precisely the type of evidence that Federal Rule of Evidence 404 rules out" because "[t]hough Rule 404(b)(2) permits evidence of prior wrongs to prove motive, opportunity, intent, preparation plan, knowledge, identity, absence of mistake, or lack of accident, none of those items are elements of a breach of contract case."); *Jeffers v. Farm Bureau Prop. & Cas. Ins. Co.*, 2014 WL 4371426, at *3 (D. Ariz. Sept. 4, 2014) (finding evidence of prior bad acts by Farm Bureau adjusters inadmissible under Rule 404(b) because plaintiff alleged only two contract-based claims which "do not implicate the prior behavior of Farm Bureau's adjusters in connection with other claims").

6

financial or purchasing commitments to Hasan's corporation, AKD, with respect to a food processing initiative involving pot pies and other products for use in the defendants' private label program. This is similar to the facts of the underlying case where [defendant] allegedly failed to follow through on its commitment to finance the miscut chicken project and to purchase boneless skinless chicken breasts from Channelmark. Channelmark claims that in both cases, [defendant] fraudulently induced the seller by agreeing to large financial commitments knowing that they did not have the means to finish the deal. Channelmark also learned, through third party discovery, that [defendant] has allegedly reneged on similar substantial food processing commitments with two other companies, Pellegrino Foods and Rosita Foods. Following the reasoning in *Jannotta, Harvey,* and *Harrod,* the subpoena should be enforced. Channelmark alleges that defendants fraudulently induced Hasan's corporation, AKD, the same way it did Channelmark.

*Id.*; *see also Jannotta*, 125 F.3d at 508, 517 (testimony of five former Subway franchise landlords that "misrepresentations similar to those alleged [by plaintiff] had been made to him while negotiating a lease with Subway" was "highly probative" under Rule 404(b) to defendants' intent for purposes of punitive damages on fraud claim). Accordingly, the Court rejects IFS's argument that the Misrepresentation Requests seek discovery that is not relevant to EMCOR's fraudulent inducement claim, particularly in light of the permissive discovery standard of Rule 26(b)(1).[4]

---

[4] With respect to the Costs Requests, IFS acknowledges the Court's prior ruling that commercial information shared by IFS with third party customers is not necessarily confidential, at least absent evidence of applicable confidentiality agreements (which IFS does not offer). *See* Motion [ECF No. 82] at 9-10. Nevertheless, IFS objects to the Costs Requests on relevancy grounds, arguing they seek commercial information about other customers that IFS says "has no bearing on whether Emcor breached its agreement with IFS." *See id.* (referencing RFP Nos. 6, 7, 8, and 9). In the Court's view, the Costs Requests potentially seek information relevant to EMCOR's fraudulent inducement claim. For instance, RFP No. 6, about the total design and implementation cost quoted by IFS to its customers, seeks discovery potentially relevant to EMCOR's theory that IFS misrepresented its implementation costs to induce a contract for its software. Similarly, given EMCOR's articulation of its fraudulent inducement theory and guided by the permissive discovery

7

The more significant problem with the Misrepresentation Requests and the Costs Requests is that they seek production of "all documents and communications referencing, evidencing, or relating to" a number of broad categories with no attempt to limit the breadth of the subpoenas as was done with the previous AmeriTex subpoena. The Court remains unconvinced, as it was with respect to the Ameritex subpoena, *see* Transcript of July 11, 2024 Hearing [ECF 53], that production by third parties of "all documents and communications" relating to broadly identified categories is discovery that is relevant and proportional to the needs of this case. The subpoenas that are the subject of the Motion also are much broader than the subpoena that EMCOR eventually served on AmeriTex after conferring about the scope of that subpoena. [ECF No. 54-1]. The AmeriTex subpoena, for the most part, sought documents relating to specific allegations in the complaint that AmeriTex filed against IFS.

EMCOR does not really respond to the overbreadth concern other than to say it agreed to exclude from the AmeriTex subpoena and the subpoenas at issue here communications between IFS and its customers if IFS separately would produce those documents which EMCOR says IFS has not done. That does not address the larger question of whether requests for "all documents and communications" relating to broad categories are appropriately tailored to obtain only information that is relevant and proportional to the needs of the case. EMCOR says it served IFS with

---

standard under Rule 26(b)(1), the Court can see the potential relevance of documents addressing demands by IFS for additional payments related to its software implementation agreements with other customers, which, if appropriately narrowed in scope, could be encompassed by RFP No. 8 (seeking all invoices issued by IFS to customers).

requests for production of documents that overlap with the requests for production in its subpoenas, but it is unclear from the briefing of the Motion whether IFS has responded to those requests for production, where the parties stand on any Local Rule 37.2 discussions about them, and whether production of documents by IFS would justify narrowing any of the subpoenas now at issue.

Moreover, as the Court previously noted with respect to the AmeriTex Subpoena, requests for all documents related to "any misrepresentation" made by IFS during its relationship with a customer are likely too broad and should be narrowed to "more particularized" requests about the specific misrepresentation(s) at issue. Transcript [ECF No. 53] at 22-23. Similarly, with respect to the Costs Requests, the Court is not convinced by EMCOR's arguments that, for example, all documents about customer payments to IFS or refunds received from IFS (RFP Nos. 7 and 9) are relevant and proportional to the needs of the case. The Court is of the same view as to RFP Nos. 6, 8, and 13.

Therefore, the Court holds in abeyance a final ruling on the Motion until the parties have had an opportunity to meet and confer about narrowing the subpoenas to comply with the Court's rulings and guidance in this Order. The parties shall file a joint status report on or before December 22, 2025 and attach to that report a copy or copies of the subpoenas as narrowed in accordance with this Order. Until such time as they have done so, the IFS customers do not need to comply with the subpoenas. (The Court is unsure whether the subpoenas actually were served before the Motion was filed.)

9

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: December 9, 2025